UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| VENTURE TAPE CORP. | ) | |
| | ) | Civil Action No. |
| Plaintiff, | ) | 03-CV-11045 (MEL) |
| | ) | |
| v. | ) | |
| | ) | |
| MCGILLS GLASS WAREHOUSE | ) | |
| and DON GALLAGHER | ) | |
| | ) | |
| Defendants | ) | |
| _____) | | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS' LIABILITY ON ALL COUNTS

Plaintiff Venture Tape Corp. ("Venture Tape"), an industry leader in the stained glass market, filed the underlying trademark infringement suit against Defendant McGills Glass Warehouse ("McGills") and McGills' owner, Defendant Donald C. Gallagher ("Gallagher"), for their unauthorized and unlawful use of Venture Tape's trademarks, including its most valuable asset—its name. Defendants misappropriated the goodwill associated with Venture Tape's trademarks by unlawfully using them in connection with McGills' website, even though Defendants did not sell Venture Tape products, never requested permission to use the subject marks, and never provided compensation to Venture Tape for use of its name and reputation.

During discovery, Defendants admitted virtually every element of trademark infringement. These admissions include: (1) wrongfully using Venture Tape's federally registered trademarks without Venture Tape's knowledge or permission; (2) selling similar goods as Venture Tape; (3) directly competing with Venture Tape; and (4) using Venture Tape's trademarks with the intent of benefiting financially from Venture Tape's goodwill. Given Defendants' admissions and the other undisputed evidence in this case, there is no genuine issue

as to any material fact on the issue of liability, and summary judgment for Venture Tape is appropriate.

## STATEMENT OF FACTS

### I.   Venture Tape's Long-Standing Use Of The "Venture Tape" And "Venture Foil" Marks

Venture Tape is a worldwide manufacturer of specialty pressure-sensitive adhesive tapes. (VC at ¶ 3; Admissions at ¶ 1.)[1]  Its United States headquarters are located in Rockland, Massachusetts, where it has done business since it was founded in 1980.  (VC at ¶¶ 2-3, 9.)

Venture Tape is an industry leader in several niche markets, including the stained glass market, for which it has a separate catalog.  (Id. at ¶ 14; see also Admissions at ¶ 6.)  It offers approximately 50 different adhesive products for use within the stained glass industry, including various foil products.  (Id.; see Admissions at ¶ 6.)  Since its founding in 1980, Venture Tape has used the trade name "Venture Tape" and placed this name on all its products, including its foil products.  (See VC at ¶ 13.)  In order to protect the integrity of its trade name "Venture Tape," and to preserve the goodwill associated with it, Venture Tape obtained two federal trademark registrations on "Venture Tape" in 1990, Registration Nos. 1,579,001 and 1,583,644.  (Id.; CJC at ¶ 3, Ex. A; see Admissions at ¶ 11.)  These registrations give Venture Tape the *exclusive*, indisputable right to use the mark "Venture Tape" and its derivatives, including "Venture Foil"

---

[1] The following abbreviations are used to cite to the record: Verified Complaint ("VC"), Exhibit 1 to the Statement of Facts ("SOF"); Defendants' Responses to Admissions ("Admissions"), Exhibit 2 to the SOF; Affidavit of Christopher J. Cunio, Esq. with attached exhibits A-D ("CJC"), Exhibit 3 to the SOF; Answer ("Ans."), Exhibit 4 to the SOF; Donald Gallagher's deposition transcript ("Gal."), Exhibit 5 to the SOF; Defendants' Ex Parte Motion for Temporary Restraining Order signed by Defendant Gallagher ("TRO"), Exhibit 6 to the SOF; Defendants' Responses to Plaintiff's First Set of Interrogatories ("INTS"), Exhibit 7 to the SOF.

throughout the United States in connection with, *inter alia,* the sale of adhesive products to the stained glass industry.[2]  <u>See</u> 15 U.S.C. §§ 1064, 1065.

In the 25 years since Venture Tape was founded, it has spent hundreds of thousands of dollars advertising and promoting its adhesive products under the trademarks "Venture Tape" and "Venture Foil" (hereinafter, the "subject marks").  (<u>See</u> VC at ¶ 11.)  Venture Tape advertises regularly in several leading stained glass industry publications.  (<u>Id.</u> at ¶ 14; <u>see</u> Admissions at ¶ 8.)  Venture Tape also maintains a strong presence on the Internet through its ownership and operation of its own website, <u>www.venturetape.com</u>, through which it promotes its products, including its foils.  (<u>See</u> VC at ¶¶ 3, 11; Admissions at ¶ 2.)  Venture Tape sells its products throughout the United States and internationally.  (<u>Id.</u> at ¶ 9.)

As a result of Venture Tape's long use of the subject marks, and its advertising and promotional efforts and expenditures in connection with the marks domestically and internationally, tremendous popularity and goodwill are associated with the marks, so that they have become extremely valuable symbols of Venture Tape with substantial commercial magnetism.  (<u>See</u> VC at ¶¶ 9, 11-12.)

## II.   <u>Defendant's Infringing Use Of The Subject Marks</u>

Defendant McGills also supplies products to the stained glass industry, selling non-Venture Tape adhesive products, including foils, and other products.  (Admissions at ¶¶ 4-5; Ans. at ¶¶ 4, 16; Gal. 76:20-22, 143:25; TRO, Mem. of Law at 1.)  McGills is located in California and is owned and operated by Defendant Gallagher. (Admissions at ¶ 3; Ans. at ¶ 4; INTS at Nos. 1-2.)  Gallagher is the sole shareholder and board member of McGills.  (Gal. 30:20-31:5, 32:9-11.)

---

[2] Defendants admit that Venture Tape holds a trademark on both the "Venture Tape" and "Venture Foil" marks.  (<u>See</u> Admissions at ¶ 11.)

Defendants' goods "compete in the marketplace with similar products manufactured by Plaintiff." (TRO, Mem. of Law at 1.) Venture Tape and McGills are "direct competitors with respect to the sale of foils to the stained glass industry." (Gal. 143:25-144:3.) McGills does not sell Venture Tape products. (Admissions at ¶ 4, Ans. at ¶ 16; Gal. 70:2-4.)

Defendants admit that as of 2000, approximately 20 years after Venture Tape began using the subject marks, they began using these same marks in connection with McGills' website, www.mcgillsglass.com, through which McGills advertises its products and solicits business. (See Admissions at ¶¶ 4, 13, 17, 21; Ans. at ¶¶ 17-18; Gal. 49:11-15; INTS at No. 3; see also CJC at ¶¶ 4-5, Exs. B-C.) Specifically, Defendants placed the terms "Venture Tape" and "Venture Foil" directly on a page in McGills' website, and deliberately programmed the website so that these terms would be the same color (white) as the webpage background and thus invisible to anyone viewing the website. (Admissions at ¶ 17; CJC at ¶ 4, Ex. B; Ans. at ¶ 18; Gal. 58:24-59:4, 60:4-10, 72:10-16; INTS at No. 7.) In addition, Defendants imbedded these terms as metatags in McGills' website. (Admissions at ¶ 13; CJC at ¶ 5, Ex. C; Ans. at ¶ 17; Gal. 58:1-7; INTS at No. 7.)[3]

By placing the subject marks directly on a page in McGills' website (programmed in white, so that viewers of the website could not see the terms) and also in the website's metatags, Defendants caused Internet search engines such as Yahoo, Google, MSN, Excite and Alta Vista (collectively, "Internet search engines") to locate McGills' website and list a link to it in a prominent position when Internet users performed keyword searches that included the terms "Venture Tape" and/or "Venture Foil." (Admissions at ¶¶ 15, 18; CJC at ¶ 6, Ex. D.) Often, the link to McGills' website would appear several positions *before* the link to Venture Tape's

---

[3] Metatags are terms buried within a website's HTML code that are not visible to anyone viewing the website. (VC at ¶ 17; Admissions at ¶ 14; Ans. at ¶ 17.)

website, even though McGills did not offer any Venture Tape products and never had any affiliation with Venture Tape.  (See CJC at ¶ 6, Ex. D.)  McGills' website did not indicate that it sold *no* Venture Tape products.  (Gal. 170:14-171:7.)  Defendants *never* requested or received permission to use the subject marks, and *never* paid Venture Tape compensation for products they sold through their use.  (Admissions at ¶¶ 20, 27; Ans. at ¶ 24; Gal. 171:8-13.)

Gallagher was personally and actively involved in Defendants' unauthorized use of the subject marks (Admissions at ¶ 22; Gal. 58:1-5, 58:24-59:4, 60:4-10, 63:21-22, 72:10-16; INTS at Nos. 4, 5, 6, 8), and "[a]ll approval [to adopt the subject marks for use in conjunction with McGills' website] was by Donald Gallagher" (INTS at No. 5).  Gallagher further testified, "Anything that was done with relation to putting anything in the computer was done by myself." (Gal. 63:21-22.)  Gallagher intentionally selected the subject marks to attract potential customers to the McGills website because it was "something that I had heard that would attract people to a website."  (Gal. 64:8-65:18; see also Gal. 160:7-9, 168:19-24.)

In sum, Defendants misappropriated Venture Tape's name recognition and goodwill and used it to lure customers into McGills' website, which sold non-Venture Tape products.  (See Gal. 64:8-65:18, 160:7-9, 168:19-24.)

## PROCEDURAL HISTORY

As a result of McGills' unauthorized and unlawful use of the subject marks, Venture Tape filed suit against the Defendants in May 2003.  Plaintiff's Complaint was in four counts: (1) Trademark Infringement under 15 U.S.C. § 1114(1), section 32 Lanham Act ("Count I"); (2) Unfair Competition under 15 U.S.C. § 1125(a), section 43(a) Lanham Act ("Count II"); (3) False Designation of Origin under 15 U.S.C. § 1125(a), section 43(a) ("Count III"); and (4) dilution under Mass. Gen. Laws ch. 110B, § 12 ("Count IV").  Several months after Venture Tape's

5

Complaint was filed, after at least three years of admitted use on its website, Defendants finally removed the subject marks from its website and from its metatags.  (Gal. 166:23-167:2.)

Throughout discovery, Defendants have admitted the elements relevant to a finding of trademark infringement.  Specifically, Defendants have admitted that: (1) Venture Tape holds valid trademarks on "Venture Tape" and "Venture Foil," thereby entitling Venture Tape to a presumption that the marks are strong (Admissions at ¶ 11); (2) Defendants used Venture Tape's exact trademarks without Venture Tape's knowledge or authorization in connection with McGills' website (Admissions at ¶¶ 13, 17; Ans. at ¶¶ 17, 18; Gal. 64:8-65:18; INTS at Nos. 3, 7); (3) McGills sells goods similar to those of Venture Tape (Admissions at ¶¶ 1, 4-6; Gal. 139:21-140:13; TRO, Mem. of Law at 1); (4) McGills directly competes with Venture Tape (Gal. 143:25-144:3; TRO, Mem. of Law at 1); and (5) Defendants used the subject marks with the intent to redirect consumers originally looking for Venture Tape's products into McGills' website instead, where competing products where sold.  (See Gal. 64:8-65:18, 160:7-9, 168:17-24.)  As this evidence shows a clear likelihood of confusion caused by Defendants' wrongful actions, Venture Tape moves for summary judgment on all claims.[4]

---

[4] In this Motion, Venture Tape is moving for summary judgment on the issue of liability only.  Venture Tape respectfully requests that the issue of damages be addressed separately, through subsequent motions or at a trial on the issue of damages only.  Venture Tape submits that the calculation of damages in this case is based upon Defendants' total sales for each year Defendants have used Venture Tape's trademarks in conjunction with McGills' website, see 15 U.S.C. § 1117(a), as Defendants have utterly failed, despite repeated requests during discovery, to identify or quantify gross sales and gross profits in connection with, *inter alia,* (1) McGills' sales of all adhesive products, including but not limited to all foils (black, copper and silver) and tapes; and (2) McGills' Internet sales, for each year Defendants have used Venture Tape's trademarks in conjunction with McGills' website.  (See Gal. 84:24-109:24; INTS Nos. 15-17.)

## ARGUMENT

## I.      Summary Judgment Standard

In trademark infringement cases, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts that the moving party is entitled to a judgment as a matter of law." Boston Athletic Ass'n. v. Sullivan, 867 F.2d 22, 24 (1st Cir. 1989) (granting summary judgment for plaintiffs where defendant's use of plaintiffs' logo would likely cause public to confuse defendant's shirts with those of plaintiffs); Fed. R. Civ. P. 56(c).

Given Defendants' numerous admissions in this case, there is clearly no genuine issue as to any material fact on the issue of liability. Venture Tape is therefore entitled to summary judgment on all counts.

## II.     Summary Judgment Should Be Granted On Counts I – III Of Venture Tape's Complaint Because Of Defendants' Admitted, Undisputed And Unauthorized Use Of The Subject Marks

It is well settled that a plaintiff is entitled to summary judgment in a trademark infringement case (Count I) where it shows that: (1) it uses, and thereby owns, a mark; (2) the defendant is using that same or a similar mark; and (3) the defendant's use of the mark by another is likely to cause confusion when compared with the plaintiff's registered mark. STAR Fin. Serv., Inc. v. AASTAR Mortgage Group, 89 F.3d 5, 9 (1st Cir. 1996) (upholding jury verdict for plaintiff where parties offered same services and targeted same classes of prospective purchasers). Evaluation of the trademark infringement claim also suffices to establish likelihood of success on the claims of unfair competition and false designation of origin (Counts II and III) under 15 U.S.C. § 1125(a). N. Light Tech., Inc. v. N. Lights Club, 97 F. Supp. 2d 96, 120 (D. Mass. 2000) (granting injunctive relief where defendant acted with bad faith intent to profit by

use of plaintiff's mark).  Venture Tape's discussion of its trademark infringement claim and the

likelihood of confusion factors thus applies equally to its unfair competition and false

designation of origin claims.

Venture Tape's federal registration of its "Venture Tape" mark is prima facie evidence of

its ownership of the mark.  15 U.S.C. § 1115(a).  As a result, Venture Tape's mark is entitled to a

presumption of validity by virtue of this registration.  Id.  Defendants also admit that Venture

Tape owns legitimate trademarks on the subject marks and uses these marks in connection with

the sale of its goods.  (Admissions at ¶¶ 11, 21.)  Moreover, as discussed below, Defendants

admit using Venture Tape's exact marks, and the elements necessary for a finding of likelihood

of confusion.  As a result, both named Defendants are liable for trademark infringement.[5]

### A.   Defendants' Use Of The Subject Marks Creates A Substantial Likelihood Of Confusion

Likelihood of confusion is often the key element of federal trademark infringement

claims.  See N. Light, 97 F. Supp. 2d at 109.  In measuring likelihood of confusion, courts in the

First Circuit generally consider eight factors: (1) the similarity of the marks; (2) the similarity of

the goods; (3) the relationship between the parties' channels of trade; (4) the relationship

between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual

confusion; (7) the defendants' intent in adopting the mark; and (8) the strength of the mark.  Id.

at 109-10.  Although each factor must be considered, no single factor is dispositive.  EMC Corp.

v. Hewlett-Packard Co., 59 F. Supp. 2d 147, 148-49 (D. Mass. 1999) (granting injunctive relief

---

[5] Defendant Gallagher is personally liable for Defendants' unauthorized and unlawful use of Venture Tape's trademarks.  A corporate officer or director may be held personally liable for the corporation's infringement if he is a "moving, active conscious force behind [the] infringement."  Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc., 592 F. Supp. 648, 652-53 (D. Mass. 1984) (finding personal liability for corporate officer at summary judgment stage where he alone supervised or managed sale of shirts infringing on plaintiff's trademark).

because prospective customers were likely to be confused as to whether the parties' respective products were associated).

In the context of the Internet in particular, courts have held that the three most important factors in determining likelihood of confusion are: (1) the similarity of the marks/names; (2) the relatedness of the goods or services; and (3) the parties' simultaneous use of the Internet as a marketing channel.  GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (noting that eight-factor test is "pliant"); SMC Productions, Inc. v. SMC Promotions, 355 F. Supp. 2d 1127, 1135 (C.D. Cal. 2005) ("If the internet trinity suggests confusion is likely, the other factors would have to weigh strongly against a likelihood of confusion to avoid a finding of infringement.").  Courts recognize that in the Internet context, Internet users are more likely to be confused as to the ownership or affiliation of a website than traditional patrons of a brick-and-mortar store would be of a store's ownership, given the small effort (usually just one click from a linked site or search engine) required to enter a website.  See N. Light, 97 F. Supp. 2d at 115 (citing Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1057 (9th Cir. 1999)).  Because both Parties here maintain websites to sell and promote their goods, the specific contextual circumstance of this case, in addition to Defendants' many admissions regarding their wrongful use of the subject marks, results in an enhanced likelihood of confusion.

### 1.      The Similarity Of The Marks

Similarity of the marks is determined "on the basis of the total effect of the designation, rather than a comparison of the individual features."  Boston Athletic, 867 F.2d at 29.  In this case, Defendants have never challenged the similarities of the marks, but rather have made numerous admissions that they used Venture Tape's exact marks without permission from

Venture Tape.  (<u>See</u> Admissions at ¶¶ 13, 17, 20; Ans. at ¶¶ 17, 18; Gal. 58:1-7, 58:24-59:4; INTS at No. 3.)  Accordingly, there is no dispute that the Parties' marks are identical, and this factor of confusion weighs in favor of Venture Tape.

### 2.     The Similarity Of The Goods

Similarity of the goods will be found where the goods offered by the parties substantially overlap and/or directly compete.  <u>See</u> <u>EMC Corp.</u>, 59 F. Supp. 2d. at 149 ("Defendant does not contest that its products are directly competing with, and therefore substantially similar to, EMC's...products...thus favor[ing] a finding of likelihood of confusion.").  Here, Defendants have made several admissions that Venture Tape and Defendants sell similar and directly competing products to the stained glass industry, including foils.  (Admissions at ¶¶ 5, 6; Gal. 135:6-20, 139:21-140:13; TRO, Mem. of Law at 1.)  Also, at his deposition, Gallagher admitted the Parties directly compete:

> Q:     Are Venture Tape and McGills Glass direct competitors with respect to the sale of foils to the stained glass industry?
>
> A:     Yes.

(Gal. 143:25-144:3.)  This factor thus greatly indicates a likelihood of confusion.

### 3.     The Parties' Channels Of Trade, Channels Of Advertising And Classes Of Prospective Purchasers

Courts generally analyze the next three factors (i.e., the relationship between the parties' channels of trade, channels of advertising, and the classes of prospective purchasers) together.  <u>See, e.g.</u>, <u>Volkswagenwerk Aktiengesellschaft v. Wheeler</u>, 814 F.2d 812, 818 (1st Cir. 1986) (granting summary judgment for plaintiff where defendant intentionally used plaintiff's mark to benefit from plaintiff's reputation).  Gallagher testified that the Parties are "direct competitors" in the stained glass industry.  (Gal. 143:25-144:3; <u>see also</u> TRO, Mem. of Law at 1.)  Defendants

further admit that the Parties both maintain websites to promote and sell their respective

products, and that both Parties target Internet users.[6]  (Admissions at ¶¶ 2, 4.)  That both parties

utilize the Internet to market their goods is a factor courts have "consistently recognized as

exacerbating the likelihood of confusion."  Brookfield Communications, 174 F.3d at 1057 (using

confusingly similar mark in website metatags is actionable under federal trademark and unfair

competition laws); see also N. Light, 97 F. Supp. 2d at 111 ("The channels of trade are identical;

both function on the Internet.  This factor suggests confusion.").  Defendants' admissions

regarding these factors thus also favor a finding of likelihood of confusion.[7]

### 4.	The Defendants' Intent In Adopting The Marks

Evidence that an infringer intentionally copied a mark creates a rebuttable presumption

that the copying was done to cause confusion.  Copy Cop, Inc. v. Task Printing, Inc., 908 F.

Supp. 37, 46 (D. Mass. 1995) (granting summary judgment for plaintiff where defendant offered

similar services and used mark almost identical to that of plaintiff); see also Volkswagenwerk,

814 F.2d at 819 (finding that defendant "chose the mark not independently, but with an intent to

benefit from [plaintiff's] reputation."); Boston Athletic, 867 F.2d at 32 (using a mark with

identical meaning to the plaintiff's protected mark clearly shows defendant's intent to profit from

plaintiff's sponsorship of Boston Marathon); Horphag Research Ltd. v. Pellegrini, 337 F.3d

1036, 1039-40 (9th Cir. 2003).  Horphag Research is particularly relevant here.  In that case, the

---

[6] As described above, potential customers searching for Venture Tape on the Internet would have located Defendants' infringing website.  Therefore, this factor of confusion favors Venture Tape.  See Jews for Jesus v. Brodsky, 993 F. Supp. 282, 304 (D.N.J. 1998) (finding likelihood of confusion where the targeted audience for both parties "are those individual using the Internet to find information about" the plaintiff).

[7] Furthermore, because the factors of the so-called "Internet trinity" (i.e., similarity of the marks, similarity of the goods, and the parties' simultaneous use of the Internet in marketing) weigh heavily in favor of Venture Tape, it is clear from these factors alone that Defendant's wrongful use of Venture Tape's marks creates a likelihood of confusion.  See SMC Productions, 355 F. Supp. 2d at 1135.

plaintiff had a federally registered trademark which the defendant repeatedly used as a metatag

on its website.  337 F. Supp. at 1039.  The plaintiff brought a trademark infringement action

against the defendant, who admitted during the course of litigation to using the plaintiff's

trademark and specifically admitted to using the mark in the metatags for his website.  Id. at

1039-40.  The court held that this admitted use "satisfies the terms of trademark infringement."

Id. at 1040-41.

Here, as in Horphag Research, Defendants admit they used the subject marks

(Admissions at ¶¶ 13, 17; Ans. at ¶¶ 17, 18; Gal. 64:8-65:18; INTS at Nos. 3, 7), and specifically

admit they placed them in the metatags of the McGills website (Admissions at ¶ 13; Ans. at ¶ 17;

Gal. 58:1-7; INTS at No. 7).  Gallagher testified that his intent was to attract customers searching

for Venture Tape products to McGills' website.[8]  (See Gal. 64:8-65:18, 160:5-9, 168:17-24.)

Furthermore, Defendants' use of the subject marks was done in bad faith, as they had *no*

reasonable basis for using the subject marks, other than to misappropriate the goodwill

associated with Venture Tape's name for their own benefit.  See N. Light, 97 F. Supp. 2d at

118-19 (finding bad faith intent because defendants targeted trademarked name and offered

dubious explanations for their use of plaintiff's mark).  This factor therefore weighs heavily in

favor of Venture Tape.

### 5.      Strength Of The Mark

The strength of a mark is measured by a number of factors, including "the length of time

the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions

---

[8] In addition to being the owner and operator of McGills, Gallagher is an inactive
attorney admitted to the California bar.  (Gal. 21:1-15, 132:6-8, Ex. 6 thereto.)  However, prior
to putting Venture Tape's marks on McGills' website, Gallagher admits he did not do any legal
research or seek any legal opinions as to Defendants' freedom to use the subject marks.  (Gal.
154:21-155:4, 212:23-213:5; INTS No. 9.)  Apparently, Gallagher was also previously
suspended from the California bar.  (Gal. 21:21-22:4, Ex. 6 thereto.)

to promote the mark."  <u>N. Light</u>, 97 F. Supp. 2d at 114.  <u>See also</u> <u>Copy Cop</u>, 908 F. Supp. at 40,

46 (spending "millions of dollars" in promotion over 28 years rendered plaintiff's marks strong).

"Strong" marks are accorded broader protection than are "weak" marks.  <u>See</u> <u>Boston Athletic</u>,

867 F.2d at 32.

      Measured by these factors, Venture Tape's marks are strong.  Venture Tape has used the

subject marks for 25 years, since it was founded in 1980, and has spent hundreds of thousands of

dollars advertising and promoting its products under these marks.  (<u>See</u> VC at ¶¶ 11, 13.)

Defendants admit that Venture Tape owns legitimate trademarks on the subject marks and uses

these marks in connection with the sale of its goods.  (Admissions at ¶¶ 11, 21, 23, 26.)  Further,

Defendants cannot contest the renown of Venture Tape in the stained glass industry throughout

the United States and internationally; instead, Gallagher testified that Venture Tape's reputation

in the stained glass marketplace is precisely why he chose to use its trademarks in connection

with its website.

> Q:    Do you know why that decision was made to include "Venture Tape" and
>        "Venture Foil in that coding [in McGills' website]?
>
> A:    We made the decision – I made the decision, and we talked about it, as to
>        something that I had heard that would attract people to a website.
>
> [...]
>
> Q:    And it was your intention, by putting these terms into the coding...that
>        when someone searched, for example, for "Venture Tape," your website
>        would be found by the search engine –
>
> A:    That is true.
>
> Q:    – and displayed as a search result?
>
> A:    Yes.

(Gal. 64:8-65:18.)  This evidence shows the subject marks deserve the strongest protection against Defendants' infringement.

The evidence on the significant similarities between the marks and goods, the overlapping channels of trade, advertising, and classes of customers, Defendants' intent in using the subject marks, and the strength of Venture Tape's marks, leads to the unmistakable conclusion that Venture Tape has demonstrated that Defendants' wrongful use of Venture Tape's trademarks results in a substantial likelihood of confusion.  Therefore, summary judgment for Venture Tape should be granted.

### III.   Summary Judgment Should be Granted Because Defendants' Admitted, Undisputed And Unauthorized Use Of The Subject Marks Results In Initial Interest Confusion

The fact that Defendants used the subject marks directly on a page in McGills' website and in the website's metatags also infringes on Venture Tape's trademarks by creating initial interest confusion.  Under this theory, the Lanham Act forbids a competitor from "luring potential customers from a producer by initially passing off its goods as those of a producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated."  EMC Corp., 59 F. Supp. 2d at 150 (citation omitted).  Thus, point-of-sale confusion is not the only type of confusion the Lanham Act seeks to prevent.  See Brookfield Communications, 174 F.3d at 1057-58 ("It is...well established that the Lanham Act protects against the many other forms of confusion that we have outlined.").  The initial interest theory has been endorsed by this court, EMC Corp., 59 F. Supp. 2d at 150; see also Niton Corp. v. Radiation Monitoring Devices, Inc., 27 F. Supp. 2d 102, 104-05 (D. Mass. 1998) (enjoining defendant's use of plaintiff's name in metatags to purposefully divert customers searching for plaintiff to its own website), as well as a number of circuits.  See EMC Corp., 59 F. Supp. 2d at 150.

Initial interest confusion is particularly applicable where, as here, the defendant's infringement consisted of using the plaintiff's trademark in metatags.  See Brookfield Communications at 1061-65 ("The few courts to consider whether the use of another's trademark in one's metatags constitutes trademark infringement have ruled in the affirmative."); see also Niton Corp., 27 F. Supp at 104-05.  Here, Defendants deliberately used Venture Tape's marks in McGills' website and metatags to divert Internet users searching for Venture Tape to McGills' website instead.  (Gal. 64:8-65:18, 160:5-9, 168:17 24.)  Even if potential customers realized immediately upon accessing McGills' website that they had reached a site wholly unrelated to Venture Tape, Defendants still wrongfully gained a customer by appropriating the goodwill that Venture Tape has developed in its marks and luring those customers to McGills' website.  See Brookfield Communications at 1057.  Summary judgment for Venture Tape based on Defendants' unauthorized and unlawful use of the subject marks to capture initial customer attention is thus also appropriate.

## IV. Summary Judgment Should Be Granted On Count IV Of Venture Tape's Complaint Because Of Defendants' Admitted, Undisputed And Unauthorized Use Of The Subject Marks

Courts will grant a claim under the Massachusetts anti-dilution statute when the plaintiff shows: (1) its mark is distinctive; and (2) that the defendant's use of the mark has created the likelihood of dilution.  See Mass. Gen. Laws ch. 110B, § 12; Tiffany & Co. v. Boston Club, Inc., 231 F. Supp. 836, 843-44 (D. Mass. 1964) (finding trademark dilution under former Mass. Gen. Laws ch. 110, § 7A).  The first element encompasses "not merely a distinctive trade name...but also characteristic quality inherent in any trade name after it has acquired a distinct secondary meaning."  Id. at 843.  The second element may be proven by evidence of: (a) injury resulting from use of the mark in a way that detracts from the reputation associated with plaintiff's mark;

(b) diminution in the uniqueness and individuality of plaintiff's mark; or (c) injury to the value of the mark caused by actual or potential confusion by the public.  See id. at 843-44.

As detailed above, there is undisputed evidence in this case that Venture Tape's use of the subject marks on its products, and its efforts and expenditures to promote the marks for the past 25 years, has established a national reputation and goodwill for the marks and for Venture Tape's products.  See supra, §§ II.A.1-6.  Further, there is incontrovertible evidence of likelihood of customer confusion resulting from Defendants' unlawful and unauthorized use of the marks in connection with McGills' website.  See id.  As a result, Defendants should be found liable for dilution under Mass. Gen. Laws ch. 110B, § 12.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Venture Tape respectfully requests that this motion be allowed and that summary judgment be entered for Venture Tape on all counts.

VENTURE TAPE CORPORATION

By its attorneys,

/s/ Christopher J. Cunio
Christopher J. Cunio, BBO # 634518
Jaimie A. McKean, BBO # 657872
COOLEY MANION JONES LLP
21 Custom House Street
Boston, MA 02110
Tel. (617) 737-3100
Fax. (617) 737-1191

DATED:  November 28, 2005
151464.1

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true and correct copy of the foregoing Plaintiff's Memorandum in

Support of Its Motion for Summary Judgment as to Defendants' Liability On All Counts was

served by first class mail this 28th day of November, 2005 upon the following:

Hodges Brown, Jr., Esq.
H. Brown & Associates
101 Tremont Street
Suite 1110
Boston, MA 02108-5004

/s/ Christopher J. Cunio
Christopher J. Cunio