UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

VENTURE TAPE CORPORATION,
    Plaintiff,

v.                    03-CV-11045-MEL

MCGILLS GLASS WAREHOUSE and
DONALD GALLAGHER,
    Defendants.

---

MEMORANDUM AND ORDER

LASKER, D. J.

    This trademark infringement suit is brought by Venture Tape Corporation ("Venture Tape") against McGills Glass Warehouse ("McGills") and its owner, sole shareholder, and sole board member, Donald Gallagher ("Gallagher"). The four count complaint alleges trademark infringement under 15 U.S.C. §1114(1), §32 of the Lanham Act (Count I); unfair competition under 15 U.S.C. §1125(a), §43(a) of the Lanham Act (Count II); false designation of origin under 15 U.S.C. §1125(a), §43(a) of the Lanham Act (Count III); and trademark dilution under M.G.L. c. 110B § 12 (Count IV). The parties cross-move for summary judgment as to liability on all counts.

## I. Relevant Facts

    Venture Tape is a worldwide manufacturer of speciality pressure-sensitive adhesive tapes and products for use within the

1

stained glass industry, including various foil products. Since its founding in 1980, Venture Tape has used the name "Venture Tape" and placed this name on all its products. In 1990, Venture Tape obtained two federal trademark registrations on "Venture Tape", Registration Nos. 1,579,001 and 1,583,644. These registrations give Venture Tape the exclusive right to use the mark "Venture Tape" and its derivatives, including "Venture Foil". Venture Tape has spent hundreds of thousands of dollars advertising and promoting its products under the trademarks "Venture Tape" and "Venture Foil", both in industry publications and through its website. As a result, popularity and goodwill have become associated with the subject marks.

McGills also supplies products to the stained glass industry, selling non-Venture Tape adhesive products. McGills' products compete in the marketplace with similar products manufactured by Venture Tape. (Gallagher Depo., 143:25-144:3.) In 2000, McGills began using the Venture Tape trademarks on its website, through which it advertises its products and solicits business. Specifically, the defendants placed the terms "Venture Tape" and "Venture Foil" directly on a page on McGills' website. (Admissions at ¶¶ 4, 13, 17, 21; Gallagher Depo. 49:11-15.) However, the defendants intentionally programmed the website so that the trademark terms would be the same color (white) as the webpage background, and therefore be invisible to anyone viewing

the website.  In addition, the defendants embedded these
trademark terms as metatags in the McGills' website.  (Admissions
at ¶¶ 13, 17; Gallagher Depo., 58:1-7, 58:24-59:4, 60:4-10,
72:10-16.)  As a result, internet search engines located McGills'
website and prominently listed a link to it when internet users
performed keyword searches including the terms "Venture Tape"
and/or "Venture Foil".  Often, the link to McGills' website would
appear before the link to Venture Tape's website, even though
McGills did not offer any Venture Tape products or have any
affiliation with Venture Tape.  Gallagher selected the subject
marks to appeal to potential customers because it was "something
that I had heard that would attract people to a website."
(Gallagher Depo., 64:8-65:18, 160:7-9, 168:19-24.)  McGills never
requested or received permission to use the Venture Tape subject
marks.  (Admissions at ¶¶ 20, 27; Gallagher Depo., 171:8-13.)

## II. Analysis

### A. Counts I, II, and III

A plaintiff is entitled to summary judgment in a
trademark infringement case when it shows that: (1) it uses, and
thereby owns, a mark; (2) the defendant is using that same or a
similar mark; and (3) the defendant's use of the mark is likely
to cause confusion when compared with the plaintiff's registered
mark.  STAR Fin. Serv., Inc. v. AASTAR Mortgage Group, 89 F.3d 5,
9 (1st Cir. 1996) (upholding jury verdict for plaintiff where

parties offered the same services and targeted the same class of prospective purchasers). Evaluation of the trademark infringement claim also suffices to establish likelihood of success on unfair competition and false designation of origin claims. N. Light Tech., Inc. v. N. Lights Club, 97 F.Supp.2d 96, 120 (D. Mass. 2000).

During discovery, the defendants admitted virtually every element of trademark infringement, including: wrongfully using Venture Tape's federally registered trademarks without Venture Tape's knowledge or permission; selling goods similar to Venture Tape's; directly competing with Venture Tape; and using Venture Tape's trademarks with the intent to benefit financially from Venture Tape's goodwill. Therefore, the issue for decision is whether Venture Tape has established a likelihood of confusion caused by McGills' use of the marks.

Under First Circuit law, a court considers eight factors in measuring the likelihood of confusion: (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting the mark; and (8) the strength of the mark. N. Light Tech., 97 F.Supp.2d at 109-110. All factors must be considered but no single factor is dispositive. EMC

4

Corp. v. Hewlett-Packard Co., 59 F.Supp.2d 147, 148-49 (D. Mass. 1999) (granting injunctive relief because prospective customers were likely to be confused as to whether the parties' respective products were associated). In the internet context, courts have held that the three most important factors are the similarity of the marks, the relatedness of the goods, and the parties' simultaneous use of the internet as a marketing channel. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000) (noting that the eight-factor test is "pliant"); SMC Productions, Inc. v. SMC Promotions, 355 F.Supp.2d 1127, 1135 (C.D. Cal. 2005) ("If the internet trinity suggests confusion is likely, the other factors would have to weigh strongly against a likelihood of confusion to avoid a finding of infringement.").

As to the similarity of the marks, the record contains numerous admissions by the defendants that they used Venture Tape's exact marks in their metatags and on their website. (Admissions at ¶¶ 13, 17, 20; Gallagher Depo., 58:1-7, 58:24-59:4.) In their motion for summary judgment, the defendants do not contest that they placed Venture Tape's trademarks into McGills' website. This factor weighs heavily in favor of Venture Tape.

As to the similarity of the goods, there is no evidence that McGills' goods can be distinguished from Venture Tape's. In fact, the defendants admit that Venture Tape and McGills sell

similar and directly competing products to the stained glass industry. (Admissions at ¶¶ 5,6; Gallagher Depo., 135:6-20, 139:21-140:13.) At deposition, Gallagher conceded that the parties directly compete. (Gallagher Depo., 143:25-144:3.) This factor also weighs strongly in Venture Tape's favor.

As to the channels of trade, channels of advertising, and classes of prospective purchasers[1], McGills' assertion that the parties do not share the same market or client base is unsupported by the record. In fact, at deposition Gallagher testified that the parties are direct competitors. (Gallagher Depo., 143:25-144:3.) Moreover, the defendants admit that both parties maintain websites to promote and sell their products, such that both of them target internet users as potential clients. (Admissions at ¶¶ 2, 4.) The fact that both parties use websites to promote and sell their products exacerbates the likelihood of confusion. See Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1057 (9th Cir. 1999); see also N. Light Tech., 97 F.Supp.2d at 111 ("The channels of trade are identical; both function on the Internet. This factor suggests confusion.").

When examining intent, evidence that an infringer intentionally copies a mark creates a rebuttable presumption that

---

[1] Courts generally analyze these three factors together. See, e.g., Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 813 (1st Cir. 1986).

the copying was done to cause confusion. Copy Cop, Inc. v. Task Printing, Inc., 908 F.Supp.37, 46 (D. Mass. 1995); see also Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 819 (1st Cir. 1986) (finding that defendant "chose the mark not independently, but with an intent to benefit from [plaintiff's] reputation"); Boston Athletic Ass'n v. Sullivan, 867 F.2d 22, 32 (1st Cir. 1989); Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1039-41 (9th Cir. 2003) (holding that admitted use of plaintiff's federally registered trademark as a metatag on defendant's website "satisfies the terms of trademark infringement"). In this case, the defendants admit that they intentionally used Venture Tape's marks as metatags on McGills' website. (Admissions at ¶¶ 13, 17; Gallagher Depo., 64:8-65:18.) Gallagher further testified that his intent in so doing was to attract customers searching for Venture Tape products to McGills' website. (Gallagher Depo., 64:8-65:18, 160:5-9, 168:17-24.) The evidence confirms that the defendants used Venture Tape's marks with the intent of benefitting from Venture Tape's reputation in the stained glass industry. See Volkswagenwerk, 814 F.2d at 819.

To determine the strength of a mark, courts look to "the length of time the mark has been used, its renown in the plaintiff's field of business, and the plaintiff's actions to promote the mark." N. Light Tech., 97 F.Supp. 2d at 114. Measured by these factors, the record evidence indicates that

7

Venture Tape's trademark is strong and deserves protection against infringement. Venture Tape has used its mark for 25 years and has spent hundreds of thousands of dollars advertising and promoting its products under these marks. The defendants admit that Venture Tape owns legitimate trademarks and uses these marks in connection with the sale of its goods. (Admissions at ¶¶ 11, 21, 23, 26.) Moreover, Gallagher testified that he chose to use Venture Tape's trademarks on McGills' website precisely because of Venture Tape's reputation in the stained glass industry. (Gallagher Depo., 64:8-65:18.) This factor also weighs heavily in favor of Venture Tape.

Courts have consistently held that evidence of actual point-of-sale confusion is not necessary to establish the likelihood of confusion, and that the Lanham Act forbids a competitor from "luring potential customers from a producer by initially passing off its goods as those of a producer's, even if confusion as to the source of the goods is dispelled by the time any sales are consummated." EMC Corp., 59 F.Supp.2d at 150-51. This rule is particularly applicable here, where the defendant's infringement consisted of using the plaintiff's trademark in metatags. See Brookfield Comms., 174 F.3d at 1061-65; see also Niton Corp. v. Radiation Monitoring Devices, Inc., 27 F.Supp.2d 102, 104-05 (D. Mass. 1998). The initial interest theory of confusion has previously been endorsed by this Court. EMC Corp.,

8

59 F.Supp.2d at 150; Niton Corp., 27 F.Supp.2d at 104-05. In the instant case, the defendants intentionally used Venture Tape's marks on McGills' website and metatags to divert internet users searching for Venture Tape products to McGills' website. Even if, upon reaching McGills' website, customers immediately realized that the site was unrelated to Venture Tape, McGills improperly gained customers by appropriating Venture Tape's goodwill. Brookfield Comms., 174 F.3d at 1057. Given the overwhelming evidence with respect to the other seven factors, which clearly weighs in favor of Venture Tape, the fact that Venture Tape presents evidence of initial interest confusion rather than point-of-sale confusion is sufficient to conclude that there is a likelihood of confusion.

It is evident from the catalogue above that the balance of relevant factors tips strongly in favor of Venture Tape. Based on Gallagher's frank admissions at deposition, for which he deserves credit, the defendants' liability in this case is unquestionable. Summary judgment on Counts I, II, and III is GRANTED to Venture Tape and DENIED to the defendants.

*B. Count IV*

With respect to Count IV of the complaint, a plaintiff is entitled to summary judgment under the Massachusetts anti-dilution statute when it shows that: (1) its mark is distinctive and (2) the defendant's use of the mark has created the

9

likelihood of dilution.  See M.G.L. c. 110B § 12; Tiffany & Co. v. Boston Club, Inc., 231 F.Supp. 836, 843-44 (D. Mass. 1964).  The first element includes "not merely a distinctive trade name...but also characteristic quality inherent in any trade name after it had acquired a distinct secondary meaning."  Id. at 843.  The second element may be demonstrated by evidence of injury resulting from use of the mark in a way that detracts from the reputation associated with the mark; diminution in the uniqueness and individuality of the mark; or injury to the value of the mark caused by actual or potential confusion.  See Id. at 843-44.  As discussed above, there is clear evidence in this case that Venture Tape's use of the subject marks on its products, and its efforts to promote those marks for the past 25 years, established a favorable reputation and goodwill for the marks and associated products.  There is also strong evidence of likelihood of customer confusion resulting from the defendant's unauthorized use of the marks in connection with McGill's website.

  The defendants' contention that Venture Tape's claim falls short because Venture Tape failed to register its trademark with the Commonwealth is erroneous.  Under the plain language of the statute, trademark registration with the Commonwealth simply is not required.  See M.G.L. c. 110B §12 (providing relief equally to marks valid at common law).  Moreover, the statute nowhere requires that the mark be "famous".  The relevant

standard under Massachusetts law is whether the mark is "distinctive". See Tiffany & Co., 231 F.Supp. at 843-44. Accordingly, McGills' motion for summary judgment on Count IV is DENIED, and Venture Tape's motion for summary judgment on Count IV is GRANTED.

### III. Conclusion

For the reasons outlined above, Venture Tape's motion for summary judgment as to liability on all counts of the complaint is GRANTED; McGills' cross-motion for summary judgment is DENIED.

It is so ordered.


Dated:  April 10, 2006
        Boston, Massachusetts     /s/ Morris E. Lasker
                                        U.S.D.J.